1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELMAR K. SCOTT, | Case No. 1:13-CV-01804-LJO-SMS |
| Petitioner, | FINDINGS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE |
| v. | |
| GARY SWARTHOUT, WARDEN, | |
| Respondent. | (Doc. 1) |

    The Court submits these Findings and Recommendation to the Honorable Lawrence J.

O'Neill, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and

304 of the United States District Court, Eastern District of California.  For the reasons set forth

below, the Magistrate Judge recommends that the Petition for Writ of Habeas Corpus be denied on

the merits without an evidentiary hearing.

### SUMMARY OF PROCEEDINGS

    Petitioner Elmar K. Scott filed a petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 challenging his Stanislaus County convictions for three counts of robbery (Cal. Pen. Code,

§ 211)[1] and four counts of assault with a semiautomatic firearm (§ 245, subd. (b)).  The jury found

---

[1] All further statutory references are to the California Penal Code, unless otherwise stated.

1

true the allegations that Petitioner personally used a firearm in the commission of the robbery (§ 12022.53, subd. (b)), took property in excess of $50,000 (§ 12022.6, subd. (a)(1)), and personally used a firearm in the commission of two of the assault charges (§ 12022.5, subd. (a)).[2]  In a bifurcated proceeding, the trial court found true the allegations that Petitioner had suffered a prior serious felony conviction (§§ 667, subds. (a), (d), 1170.12, subds. (a), (d)).  The trial court sentenced Petitioner to a total term of 31 years 4 months in state prison. *People v. Bledsaw et al.*, F060584, 2011 WL 5252630 (Cal. Ct. App. Nov. 4, 2011).

On November 4, 2011, the California Court of Appeal, Fifth District affirmed the judgment. On February 1, 2012, the California Supreme Court denied the petition for review.

On November 20, 2012, Petitioner filed his initial habeas petition for writ of habeas corpus by a person in state custody in which he raised substantively the same grounds as he does in the instant petition. *See People v. Scott*, Stanislaus Superior Court Case No. 1097055 (April 3, 2013). On April 3, 2013, the Superior Court denied his petition. *Id.*  Petitioner filed a state habeas petition before the California Court of Appeal on May 14, 2013, and the California Supreme Court on July 23, 2013.  The court summarily denied these petitions on July 10, 2013 and October 16, 2013, respectively.

In the instant case, Respondent filed an answer on April 18, 2014 (Doc. 21).  On May 19, 2014, Petitioner filed a reply (Doc. 23).  The matter is now ripe for review.  Also before the Court is Petitioner's "Request for Leave of Court to Request Motion for Evidentiary Hearing," filed on November 3, 2014 (Doc. 24).

//

//

//

---

[2] Petitioner was charged and tried with two coparticipants, Rashod Omar Bledsaw and Dashelle Sherree Harris. *See People v. Harris*, F057937 (July 28, 2010).

### STATEMENT OF FACTS

Below are the facts set forth in the California Court of Appeal decision on direct review.  To the extent an evaluation of Petitioner's claims for relief depends on an examination of the record, the Court has made an independent evaluation of the record specific to Petitioner's claims for relief.[3]

On August 24, 2005, two men brandishing guns and with bandannas covering their faces ran into the Valley First Credit Union in Turlock and told everyone to get down. One of the men wore a dark hooded sweatshirt with the hood up and a blue bandanna covering his face; the other wore a brown and khaki knit cap and a white bandanna. Branch manager Ted Paollella and employees Carmen Raya, Joanna Risen, and Somer Foster were present at the time.

One of the men motioned for Raya to come towards him. When she did, he grabbed her. The surveillance video taken during the event shows Raya going to the bank's vault room with her hands up.

One of the men grabbed Foster by the shirt and pulled her over to the vault door and had her prop it open. The man then ordered Foster to get down on the ground and she complied. After the men took the money from the vault, Foster overheard them say they wanted the money from the ATM (automated teller machine). The men ordered the employees into the bathroom where they stayed until the robbery was over.

The man who grabbed Raya told Paollella he wanted to go to the vault. When Paollella reached the vault, Raya, Foster and another male were inside on the floor. After Paollella unlocked the cash drawer, he was instructed to lie on the ground. After the men took the money, they asked about the ATM. But before they were able to access the ATM, the men left the bank with approximately $86,000.

Stephanie Maddox was outside the credit union when she noticed a man with a scarf covering his face crouched near the front door. Thinking this was unusual, Maddox followed the man inside. When Maddox entered, a man wearing a scarf covering his face pointed a gun at her head and told her to lie down in front of the safe. She complied.

Troy Webb and Niles Gregory were working in the parking lot next door to the credit union when a coworker ran into the parking lot and told them the credit union was being robbed. Moments later, a man ran into the parking lot, attempted to scale a wall, turned and pointed a semiautomatic or automatic gun at Webb and Gregory and told them to get down on the ground. The man then jumped over the wall. Webb and Gregory looked over the wall and saw two men jump into the trunk of a vehicle, which sped off.

---

[3] The Court has independently reviewed the record out of an abundance of caution in light of *Jones* notwithstanding Ninth Circuit cases that have accorded the factual summary set forth in an opinion of a state court a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1). *See Slovik v. Yates*, 556 F.3d 747, 749 n. 1 (9th Cir. 2009) (as amended); *Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir. 2009) (as amended); *Tilcock v. Budge*, 538 F.3d 1138, 1141 (9th Cir. 2008); *Mejia v. Garcia*, 534 F.3d 1036, 1039 N. 1 (9th Cir. 2008).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  Here, Petitioner does not contest the California Court of Appeal's summary of the underlying facts, nor has he attempted to overcome the presumption of correctness accorded to it. *Tilcock*, 538 F.3d at 1141.

Shortly thereafter, officers apprehended a vehicle and discovered appellants hiding in the trunk with a large amount of cash and two loaded semiautomatic firearms.

*People v. Bledsaw et al.*, F060584, 2011 WL 5252630 (Cal. Ct. App. Nov. 4, 2011).

## PETITIONER'S CLAIMS

1. There was insufficient evidence presented at trial to support the firearm enhancement as to counts 6 and 7 (assault charges).

2. The trial court incorrectly instructed the jury under California's natural and probable consequences doctrine.

3. Petitioner received ineffective assistance of counsel at trial.

4. The trial court erred by failing to undertake an independent review of whether Petitioner had been properly advised of his constitutional rights during a previous trial, and that conviction was used in the instant case as a prior conviction for sentencing purposes.

5. The prosecution committed misconduct by failing to disclose to the defense allegedly material evidence.

6. Cumulative error.

## STANDARD OF REVIEW

A federal court may not grant a petition for writ of habeas corpus by a person in state custody with respect to any claim that was adjudicated on the merits in state court unless it (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Harrington v. Richter,* —— U.S. ——, ——, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011); *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension).

//

//

4

A state court's decision is "contrary to" clearly established Federal law[4] "if the State court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases or if the State court confronts a set of facts that are "materially indistinguishable'" from a decision of the Supreme Court and "nevertheless arrives at a result different from that precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)); *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).  A state court's decision cannot be contrary to clearly established Federal law if there is a "lack of holdings from" the Supreme Court on a particular issue. *Carey v. Musladin,* 549 U.S. 70, 77, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006).

 "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75; *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) ("In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.").  Federal habeas corpus relief does not lie for mere errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  State court decisions must be given the benefit of the doubt. *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed. 2d 279 (2002).  Indeed, "[t]he state court's application of clearly established law must be objectively unreasonable." *Id.; see also Clark v. Murphy,* 331 F.3d 1062, 1068 (9th Cir. 2003).

Under the "unreasonable application prong" of section 2254(d) (1), a federal court may grant habeas relief "based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced." *Lockyer,* 538 U.S. at 76; *see also Rompilla*

---

[4] "'[C]learly established Federal law' . . . is the governing legal principle or principles set forth by the Supreme Court at the time the state court rendered its decision." *Lockyer v. Andrade,* 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

*v. Beard,* 545 U.S. 374, 380, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) ("An 'unreasonable application' occurs when a state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts; of petitioner's case." (citation and quotations omitted.)  A state court's decision "involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle . . . to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor,* 529 U.S. 362, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

A state court's determination of a factual issue "shall be presumed to be correct," and petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller–El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").  Pursuant to section 2254(d), a federal court "must determine what arguments or theories supported or, [in the case of an unexplained denial on the merits], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this [Supreme] Court." *Richter,* 131 S.Ct. at 786.  Further, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

In applying these standards, this court looks to the last reasoned State court decision. *Davis v. Grigas,* 443 F.3d 1155, 1158 (9th Cir. 2006).  To the extent no such reasoned opinion exists, as

6

when a state court rejected a claim without explanation, this court must conduct an independent review to determine whether the decisions were contrary to, or involved an unreasonable application of, "clearly established" Supreme Court precedent. *Walker v. Martel,* 709 F.3d 925, 939 (9th Cir. 2013); *Haney v. Adams,* 641 F.3d 1168, 1171 (9th Cir. 2011).

## DISCUSSION

Petitioner raised all grounds on direct appeal. Because the California Supreme Court summarily denied that previous petition, the California Court of Appeal's opinion is the last reasoned decision.

**I.    GROUND ONE: Sufficiency of Evidence to Support Firearms Enhancement**

Petitioner argues that there was insufficient evidence at trial to support the firearm enhancement imposed pursuant to California Penal code section 12022.5.

A.  California Court of Appeal decision

In rejecting the corresponding claims on direct appeal, the California Court of Appeal reasoned as follows:

> Appellants were convicted in counts 6 and 7 of assault with a semiautomatic firearm in violation of section 245, subdivision (b). In addition, the jury found true the allegation attached to those counts that appellants personally used a firearm, a handgun, pursuant to section 12022.5, subdivision (a), in the commission of those offenses. Appellants argue that, due to disguises worn by both of them, the witnesses were unable to distinguish which appellant perpetrated which assault and, therefore, the evidence is legally insufficient to support appellants' "personal" gun use related to the counts.

> Respondent disagrees, but submits that the gun enhancement must nonetheless be stricken because section 12022, subdivision (a)(1) authorizes a one-year enhancement for the use of a firearm in the commission of a felony, "unless the arming is an element of that offense," and section 245, subdivision (b), of which appellants were convicted, describes "assault upon the person of another with a semiautomatic firearm...." When personal use of a firearm is an element of the underlying offense, imposition of the one-year sentence enhancement for that personal use is not proper since personal use of the firearm is an element of the charged offense. (*People v. Sinclair* (2008) 166 Cal.App.4th 848, 855–856.)

> We disagree with both parties for the following reasons. Preliminarily, we note that the gun enhancement at issue here is not section 12022, subdivision (a), as argued by respondent, but section 12022.5, subdivision (a), which provides:

7

> "Except as provided in subdivision (b), any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense."

But section 12022.5, subdivision (d) states in relevant part:

> "Notwithstanding the limitation in subdivision (a) relating to being an element of the offense, the additional term provided by this section shall be imposed for any violation of Section 245 if a firearm is used...."

The California Supreme Court held in *People v. Ledesma* (1997) 16 Cal.4th 90, 97, that "[section 12022.5,] subdivision (d) creates an exception to the proviso in subdivision (a) and renders imposition of a use enhancement mandatory for the enumerated offenses." Accordingly, imposition of the section 12022.5, subdivision (a) enhancement appended to the section 245, subdivision (b) offense of assault with a semiautomatic firearm is mandatory, if proven.

That said, we must still resolve the question of whether there is sufficient evidence to support the gun enhancements related to counts 6 and 7. The evidence at trial was that count 6 involved Stephanie Maddox, who saw a man outside the credit union with a scarf covering his face crouched near the front door. Maddox followed the man inside and was then assaulted. Count 7 involved Somer Foster, who was grabbed by the shirt and pulled over to the vault door and told to prop it open. Since both robbers were in disguise, Foster and Maddox were unable to distinguish which appellant perpetrated the assault against them.

Appellants challenge the imposition of the enhancement because each claims he did not personally commit the assault with a firearm on Maddox and Foster, and the statute does not allow a finding of personal gun use on vicarious liability. We disagree.

In *In re Antonio R.* (1990) 226 Cal.App.3d 476, the defendant shot his gun into a crowd, and someone in the crowd fired back, killing one of the defendant's companions. The defendant was convicted of murder, and his sentence was enhanced by two years under section 12022.5. The defendant cited, inter alia, as appellants do here, to *People v. Walker* (1976) 18 Cal.3d 232 and *People v. Allen* (1985) 165 Cal.App.3d 616, challenging the enhancement because he did not personally commit the murder: "As he was found guilty of murder on the theory of vicarious liability, appellant reasons, he is not subject to the enhancement, even if he personally used a firearm while the killing was being committed." (*In re Antonio R., supra,* at p. 479.)

The court in *In re Antonio R.* distinguished *Walker* and *Allen,* noting that, while they stood for the proposition that one who does not personally use a firearm may not suffer a section 12022.5 enhancement, neither case considered whether the enhancement "applies to one who personally uses a firearm but is only vicariously liable for the underlying crime." (*In re Antonio R., supra,* 226 Cal.App.3d at p. 479.) The court rejected the defendant's argument, stating:

"The obvious purpose of section 12022.5 is to discourage the use of firearms in criminal activity. Had the Legislature meant to exclude from its provisions one who is only vicariously liable, it could easily have done so.... As we read the statute, one who commits an act which renders him criminally liable, whether directly or vicariously, is subject to the section 12022.5 enhancement if he personally uses a firearm during that act." (*Ibid.*)

Appellants, like the defendant in *In re Antonio R.,* both used a firearm to commit an act (the robbery) which made each vicariously liable for the assault with a firearm on Maddox and Foster, and each was therefore properly subject to the enhancement. (See *People v. Berry* (1993) 17 Cal.App.4th 332, 335–339 [listing cases supporting imposition of § 12022.5 enhancement when each defendant holds a gun in a series of joint offenses and enhancement is added for crime one defendant aided and abetted].) Both appellants were armed and actively using a gun when the robbery occurred. Each was therefore vicariously liable for the actions of the other.  " 'There being no question that appellant personally used a firearm during the course of the instant robbery, the enhancement was entirely proper regardless of whether or not he also personally [used his gun on] the victim[s]. [Citations.]' " (*People v. Berry, supra,* at p. 337.)

Appellants also cite *People v. Nguyen* (1988) 204 Cal.App.3d 181, in which the defendant entered a market with an accomplice, both armed. The confederate took a clerk to the rear of the store; the defendant stayed up front. After the defendant shouted a "Vietnamese battle phrase used when 'someone was to kill or be killed,'" the confederate shot the victim. (*Id.* at p. 185.) The Fourth Appellate District held "the evidence supports a finding of ... *use* of a firearm during the robbery but not the attempted murder." (*Id.* at p. 194.)

Subsequently, however, in *People v. Walker* (1988) 47 Cal.3d 605, 634–635, our Supreme Court held that a defendant who displayed a gun during a robbery was subject to an enhancement for personal use of a gun in the commission of murder as well as robbery, although no witnesses observed who fired the shots, and the defendant handed the gun to his accomplice some time earlier. Rejecting the defendant's contention that the jury should have been instructed that the gun-use allegation could be found true only if the "defendant *used* the gun to commit the murder, and that his earlier display or use of the gun in the commission of a 'separate' felony (robbery) would be insufficient to support such a finding," the court noted: "Section 12022.5 is intended to distinguish those who are willing to use firearms while committing felonies from those who are not, and to increase the penalty for the former."(*Ibid.*) "By implication, the California Supreme Court has rejected the reasoning of *Nguyen* and *Allen.*"(*Ballard v. Estelle* (9th Cir. 1991) 937 F.2d 453, 458, fn. 6.)

Appellants were properly subject to the section 12022.5 firearm enhancement on counts 6 and 7, and there is sufficient evidence to support the true findings.

*People v. Bledsaw*, *et al.*, F060584, 2011 WL 5252630 (Cal. Ct. App. Nov. 4, 2011).

//

//

9

B.  Legal Authority

Applicable Federal Law

The Due Process Clause of the Fourteenth Amendment guarantees that a criminal defendant may only be convicted "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).  The California standard for determining the sufficiency of the evidence to support a conviction has subsequently been held by the California Supreme Court to be identical to the federal standard enunciated by the United States Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See People v. Johnson,* 26 Cal.3d 557, 576, 162 Cal.Rptr. 431, 606 P.2d 738 (1980).

Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original); *see also Parker v. Matthews,* 567 U.S. ——, 132 S.Ct. 2148, 2152, 183 L.Ed.2d 32 (2012) (per curiam).  In making this determination, the reviewing court "must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." *Walters v. Maass,* 45 F.3d 1355, 1358 (9th Cir. 1995); *see also Cavazos v. Smith,* 565 U.S. ——, 132 S.Ct. 2, 6, 181 L.Ed.2d 311 (2011) (per curiam) (*Jackson* "instructs that a reviewing court 'faced with a record of historical facts that support conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" (quoting *Jackson,* 443 U.S. at 326)).

Thus, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith,* —— U.S. ——, 132 S.Ct. 2, at * 4, 181

L.Ed.2d 311 (2011) (per curiam).  Under *Jackson*, "[a] jury's credibility determinations are . . .

entitled to near-total deference." *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004); *see also*

*Schlup v. Delo,* 513 U.S. 298, 330, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) ("[U]nder *Jackson,* the

assessment of the credibility of witnesses is generally beyond the scope of review.").  Furthermore,

"[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction."

*Walters,* 45 F.3d at 1358 (citation and internal quotations omitted).

AEDPA requires an additional degree of deference to a state court's resolution of an

insufficiency of the evidence claim. *See Coleman v. Johnson,* 566 U.S. ——, 132 S.Ct. 2060, 2062,

182 L.Ed.2d 978 (2012) (per curiam) ("*Jackson* claims face a high bar in federal habeas proceedings

because they are subject to two layers of judicial deference.").  Consequently, habeas relief is not

warranted unless "the state court's application of the *Jackson* standard [was] 'objectively

unreasonable.'" *Juan H. v. Allen,* 408 F.3d 1262, 1275 n. 13 (9th Cir. 2005) (as amended); *see also*

*Coleman,* 132 S.Ct. at 2062; *Smith,* 132 S.Ct. at 4.  Finally, "the standard must be applied with

explicit reference to the substantive elements of the criminal offense as defined by state law," at the

time that a petitioner committed the crime and was convicted, and look to state law to determine

what evidence is necessary to convict on the crime charged. *Jackson,* 443 U.S. at 324 n. 16; *see also*

*Chein v. Shumsky,* 373 F.3d 978, 983 (9th Cir. 2004).

<u>Applicable California Law</u>

a.   Aiding and Abetting Liability

Under California law, "a person who aids and abets the commission of a crime is a

'principal' in the crime, and thus shares the guilt of the actual perpetrator." *People v. Prettyman,* 14

Cal.4th 248, 259, 58 Cal.Rptr.2d 827, 926 P.2d 1013 (1996). An aider and abettor "is a person who,

'acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose

of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids,

promotes, encourages or instigates, the commission of the crime.'" *Id.* at 259, 58 Cal.Rptr.2d 827, 926 P.2d 1013; *People v. Cooper,* 53 Cal.3d 1158, 1164, 811 P.2d 742, 282 Cal.Rptr. 450 (1991). The intent of the aider and abettor must be formed "before or as the offense is being committed." *People v. Montoya,* 7 Cal.4th 1027, 1039, 31 Cal.Rptr.2d 128, 874 P.2d 903 (1994); *Cooper,* 53 Cal.3d at 1164, 282 Cal.Rptr. 450, 811 P.2d 742.  Factors that are probative on the issue of knowledge and intent include "presence at the scene of the crime, companionship and conduct before and after the offense, including flight." *People v. Mitchell,* 183 Cal.App.3d 325, 330, 228 Cal.Rptr. 286 (1986); *see also People v. Chagolla,* 144 Cal.App.3d 422, 429, 193 Cal.Rptr. 711 (1983).

b.   Natural and Probable Consequences Doctrine

"[A] defendant may be held criminally responsible as an accomplice not only for the crime he or she intended to aid and abet (the target crime), but also for any other crime that is the 'natural and probable consequence' of the target crime [non-target crimes]." *People v. Prettyman,* 14 Cal.4th 248, 262, 58 Cal.Rptr.2d 827, 926 P.2d 1013 (Cal. 1996).  Under the natural and probable consequences doctrine, an aider and abettor's liability "is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted." *People v. Nguyen,* 21 Cal.App.4th 518, 535, 26 Cal.Rptr.2d 323 (1993).  In addition to the elements for aider and abettor liability set forth above, the trier of fact must also find that "[1] the defendant's confederate committed an offense other than the target crime; and [2] the offense committed by the confederate was a natural and probable consequence of the target crime that the defendant aided and abetted." *Prettyman,* 14 Cal.4th at 262, 58 Cal.Rptr.2d 827, 926 P.2d 1013.  Where more than one target offense is alleged, the jury need not unanimously agree which originally contemplated crime the defendant aided and abetted so long as the jury unanimously agrees beyond a reasonable doubt that the defendant aided

and abetted an identified and defined target crime, and that the offense committed by the confederate was a natural and probable consequence of the target crime. *See Prettyman,* 14 Cal.4th at 267–68, 58 Cal.Rptr.2d 827, 926 P.2d 1013.

### i.   Target Offenses

The trial court identified "robbery" as the target offense in Petitioner's case.  Petitioner does not challenge the sufficiency of the evidence supporting his conviction for robbery.  Indeed, he appears to concede the sufficiency of the evidence supporting his conviction of the target crime.

### ii.   Non-Target Offenses

The trial court identified "assault with a firearm" as the non-target offense in Petitioner's case.  California law defines assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Pen. Code § 240; *see also* Cal. Pen. Code § 245(a)(2) (assault with a firearm).

In order to find a person guilty of assault with a firearm, a jury must find the following elements: (1) the defendant did an act with a firearm that by its nature would directly and probably result in the application of force to a person; (2) the defendant did that act willfully; (3) when the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and (4) when the defendant acted he had the present ability to apply force with a firearm to a person. *See* CALCRIM No. 875.

### C.   Analysis

Petitioner contends that there was insufficient evidence that he personally used a firearm during the assaults because, as between the two robbers, witnesses were unable to distinguish who committed which assault.

13

The California Court of Appeal rejected Petitioner's argument.  The court held that enhancement for personal use of a firearm[5] may be found where a defendant displayed a gun during a robbery and at least one of the co-defendants committed assault, and rejected the defendant's contention that the gun-use allegation could be found true only if the defendant could be found to have committed a specific assault.  The court found sufficient evidence that Petitioner intentionally displayed his firearm to facilitate the robbery, as did his confederate, and it was reasonably foreseeable that an assault would occur during the robbery in that context.  On that basis, the court concluded that Petitioner was vicariously liable for the assaults and a firearm enhancement was appropriate.

Under California law, "any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense." Cal. Pen. Code § 12022.5(a).  Similarly, California Penal Code section 12022.53(b) provides: "Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a) [which includes robbery], personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years." Evidence is sufficient to prove the use of a firearm "where there is some type of display of the weapon, coupled with a threat to use it which produces fear of harm in the victim." *People v. Dominguez,* 38 Cal.App.4th 410, 421, 45 Cal.Rptr.2d 153 (1995).

There is ample evidence that Petitioner used a firearm in the commission of the felony. Multiple witnesses testified that they saw two bandanna-wearing men enter and rob the credit union, each carrying a firearm.  Specifically, the evidence at trial was that Stephanie Maddox saw a man in

---

[5] A "'firearm' means a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion." Cal. Pen. Code §§ 12001, 16520(a) (internal quotations omitted).

14

disguise crouched at the front door outside the credit union. The man, one of the two robbers, assaulted Maddox with a firearm after she followed him inside the building.  Also, one of the robbers grabbed Somer Foster and pulled him to the credit union's vault.

The evidence presented at trial overwhelmingly supports the court's reasonable inference that the Petitioner used a firearm in the commission of the robbery, as did his confederate.  Both men carried a gun into the credit union for the target crime of robbery.  Therefore, a jury could have reasonably concluded that it was objectively foreseeable that by carrying a gun into the credit union with a plan to rob it, the perpetrators would use the guns to willfully apply force with a firearm to a person inside the credit union, thereby committing assault with a firearm.  Consequently, a reasonable jury could find Petitioner vicariously liable for his confederate's actions, notwithstanding the particulars of who committed which assault.

Here, Petitioner does not allege that there is insufficient evidence to support his co-defendant's conviction of these crimes.  Indeed, by his argument that as between the two robbers, he did not commit the assault, he essentially concedes that there is sufficient evidence to support his co-defendant's conviction of the non-target crime.  Petitioner does not argue that he did not use a gun in the robbery.  Essentially, Petitioner's argument is that the jury could have reached other conclusions from the facts.  However, determining whether the ultimate crime is a natural and probable consequence of the predicate crime involves an objective, factual analysis. *People v. Prettyman,* 14 Cal.4th 248, 290, 58 Cal.Rptr.2d 827, 926 P.2d 1013, 1039 (Cal. 1996).  At trial, the jury made factual findings which this Court may not disturb.  Even assuming *arguendo* that evidence supported a contrary result – which it does not – "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record– that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that

resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 131, 130 S.Ct. 665, 175 L.Ed.2d 582 (2010) (citation omitted).

At bottom, although Maddox and Foster were unable to distinguish which disguised robber perpetrated which assault, the trial court found that the doctrines of natural and probable consequence and vicarious liability applied. The jury found true the allegations that Petitioner personally used a firearm in the commission of the robbery. Petitioner has failed to show that no rational trier of fact could have agreed with the jury. *Cavazos v. Smith*, — U.S. — , —, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam).

The state court's decision was not contrary to, nor an unreasonable application of, clearly established federal law and was not an unreasonable determination of the facts. Ground One does not warrant habeas relief.

## II.    GROUND TWO: Erroneous Jury Instruction

Petitioner argues that his convictions in counts 4 through 7 must be reversed because the trial court incorrectly instructed the jury under California's natural and probable consequences doctrine.

A.  California Court of Appeal decision

The California Court of Appeal rejected Petitioner's corresponding claims on direct appeal for the following reasons:

> Appellants were charged with four counts of assault with a semiautomatic firearm in violation of section 245, subdivision (b); specifically, assault on Gregory (count 4), on Webb (count 5), on Maddox (count 6), and on Foster (count 7). Since disguises prevented the witnesses from distinguishing which appellant committed which assault, the prosecutor argued in part on a theory of aiding and abetting and the natural and probable consequence doctrine.

> The jury was instructed, inter alia, with CALCRIM Nos. 875, assault with a semiautomatic firearm, 915, the lesser included offense of simple assault, and 402, the natural and probable consequence doctrine. Appellants contend the trial court erred, both orally and in writing, in giving CALCRIM No. 402 when it substituted the nontarget offense of assault with a deadly weapon with the target offense of robbery, so that the instruction read, in part, as follows:

16

"To prove that a defendant who did not personally commit an assault with a semiautomatic firearm guilty of that crime, the People must prove that: [¶] One, the defendant is guilty of robbery; [¶] Two, during the commission of robbery, a co-participant in that robbery committed the crime of assault with a semi-automatic firearm; [¶] Three, under all the circumstances, a reasonable person in the defendant's position would have known that *the commission of robbery was a natural and probable consequence of the commission of robbery.*" (Italics added.)

Based on the erroneous substitution of "robbery" for "assault with a semiautomatic firearm" in the third element of CALCRIM No. 402, appellants claim the trial court failed to instruct the jury on an essential element, requiring reversal of their assault convictions.[3] We agree with respondent that although error occurred, it was harmless.

A person who knowingly aids and abets criminal conduct is guilty not only of the intended crime but also of any other crime the perpetrator actually commits that is a natural and probable consequence of the intended crime. The latter question is not whether the aider and abettor actually foresaw the additional crime, but whether, judged objectively, it was reasonably foreseeable. (*People v. Mendoza* (1998) 18 Cal.4th 1114, 1133.) Whether a charged crime is a natural and probable consequence of a target crime is a question of fact. (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 531.)

Here, the prosecutor proceeded, in part, on the natural and probable consequence theory as to the assault charges, at times in argument referring to appellants and at other times referring to Harris, appellants' coparticipant who drove the getaway car. When the prosecution relies on the natural and probable consequences doctrine to prove a defendant's guilt, the court has a sua sponte duty to identify and describe for the jury any target offense allegedly aided and abetted by the defendant. (*People v. Prettyman* (1996) 14 Cal.4th 248, 268–269.)

"In reviewing claims of instructional error, we look to whether the defendant has shown a reasonable likelihood that the jury, considering the instruction complained of in the context of the instructions as a whole and not in isolation, understood that instruction in a manner that violated his constitutional rights. [Citations.] We interpret the instructions so as to support the judgment if they are reasonably susceptible to such interpretation, and we presume jurors can understand and correlate all instructions given. [Citations.]" (*People v. Vang* (2009) 171 Cal.App.4th 1120, 1129.)

Despite the erroneous substitution of the target offense for the nontarget offense in CALCRIM No. 402, we find the instruction, when read in its entirety, adequately instructed the jury on the natural and probable consequences theory of liability pursued by the prosecution. There is no reasonable possibility the jury would have understood it could find appellants guilty of the crime of assault with a semiautomatic firearm if it did not find that the commission of assault with a semiautomatic weapon was a natural and probable consequence of the commission of the robbery under the circumstances in this case. Immediately before setting out the three elements quoted above, CALCRIM No. 402 correctly told the jury:

"If you find that a defendant did not personally commit an assault with a semiautomatic firearm, you must first decide whether that defendant is guilty of

17

robbery. If you find that defendant is guilty of robbery, you must then decide whether she or he is guilty of assault with a semiautomatic firearm. [¶] Under certain circumstances a person who is guilty of one crime, may also be guilty of other crimes that were committed at the same time. To prove that a defendant who did not personally commit an assault with a semiautomatic firearm guilty of that crime, the People must prove...."

And immediately after setting out the three elements quoted above, CALCRIM No. 402 correctly told the jury:

"A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence. If the assault with a semi-automatic firearm was committed for a reason independent of the common plan to commit the robbery, then the commission of assault with a semi-automatic firearm was not a natural and probable consequence of robbery."

We presume that the jury consists "of intelligent persons who are fully able to understand, correlate and follow the instructions given to them." (*People v. Archer* (1989) 215 Cal.App.3d 197, 204.) In light of the correct language in the latter half of the instruction, we believe intelligent jurors would have understood CALCRIM No. 402 to be asking them to determine whether the commission of assault with a semiautomatic firearm in this case was a natural and probable consequence of the commission of robbery, not whether robbery was a natural and probable consequence of robbery, which would constitute a nonsensical reading of the instruction.

*People v. Bledsaw*, F060584, 2011 WL 5252630 (Cal. Ct. App. Nov. 4, 2011).

B. Legal Authority

Applicable Federal Law

Federal habeas corpus relief does not lie for errors of state law; and a claim that a state court failed to follow its own state law in regard to jury instructions given at trial does not necessarily invoke a federal constitutional question. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Gilmore v. Taylor,* 508 U.S. 333, 343, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993). In order to warrant federal habeas relief, a challenged jury instruction or omitted or ambiguous instruction must violate due process to the extent that it so infected the entire trial that it rendered the resulting conviction "fundamentally unfair." *Estelle,* 502 U.S. at 67, 71–73; *McKinney v. Rees,* 993 F.2d 1378, 1379–80 (discussing *Estelle* ).  Furthermore, in reviewing the effect of a claimed

18

instructional error, an instruction may not be judged in "artificial isolation, but must be viewed in the context of the overall charge," recognizing that "the challenged instruction [is] but one of many such instructions, [and] the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction, including testimony of witnesses, and receipt of exhibits in evidence." *Pulido v. Chrones,* 629 F.3d 1007, 1012 (9th Cir. 2010); *see also Estelle,* 502 U.S. at 72. In addition, where a petitioner claims that an instruction was erroneously omitted, the petitioner bears an "especially heavy burden" because an omitted or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Villafuerte v. Stewart,* 111 F.3d 616, 624 (9th Cir. 1997) (citing *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977)).

Lastly, where a claimed instructional error is a "trial type" error that did not lower the standard of proof beyond a reasonable doubt or vitiate all of the jury's findings, such an error is subject to harmless error analysis under the standard set forth in *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), which asks whether the error "had substantial and injurious effect or influence in determining the jury's verdict" and resulted in "actual prejudice." *Brecht,* 507 U.S. at 637–638. *See also Clark v. Brown,* 450 F.3d 898, 904–05 (9th Cir. 2006) (analyzing claim of instructional error under *Brecht* standard).

<u>Applicable California Law</u>

Under California law, persons who are involved in committing a crime (that is, "the persons responsible for the commission of a crime") are referred to as "principals in *that* crime"; and each principal, regardless of the extent or manner of their participation, is equally guilty. *See People v. Mejia,* 211 Cal.App.4th 586, 622, 149 Cal.Rptr.3d 815 (2012) (citing CALJIC No. 3.00) (underline added).  "Principals include: 1. Those who directly and actively commit the act constituting *the* crime, or 2. Those who aid and abet the commission of *the* crime." *Id.* (underline added).

The "aiding" element of "aiding and abetting" requires some conduct by an accomplice that results in the accomplice becoming involved in the commission or attempted commission of a crime. *See People v. Croy,* 41 Cal.3d 1, 11, 221 Cal.Rptr. 592, 710 P.2d 392 (1985).  The "abetting" element is the intent and knowledge of the wrongful purpose of the crime. *See People v. Stein,* 55 Cal.App.2d 417, 420, 130 P.2d 750 (1942).  The "abetting" requirement looks for a criminal state of mind; and specifically, it requires that the accomplice have both (1) knowledge of a perpetrator's unlawful purpose to commit the crime and (2) the intent to facilitate that unlawful purpose. *See People v. Campbell,* 25 Cal.App.4th 402, 413–14, 30 Cal.Rptr.2d 525 (1994).  Thus, a defendant who directly aids and abets an intended crime is a principal who is as "equally guilty" of the crime as the direct perpetrator. *See, e.g., People v. Nguyen,* 21 Cal.App.4th 518, 530, 26 Cal.Rptr.2d 323 (1993) (if the aider and abettor's acts "are undertaken with the intent that the actual perpetrator's purpose be facilitated thereby, he is a principal and liable for the commission of the offense").

Furthermore, under California law, a person (or "co-principal") who knowingly aids and abets an actual perpetrator in the commission of a crime is guilty not only of the contemplated crime that the perpetrator actually committed and that the other person/co-principal specifically aided and abetted (that is, the so-called "target crime"), but the co-principal may also be guilty of any other crime (that is, a "non-target crime") that is a "natural and probable consequence" of the intended, target crime. *See People v. Favor,* 54 Cal.4th 868, 874, 143 Cal.Rptr.3d 659, 279 P.3d 1131 (2012) (citing *People v. Medina,* 46 Cal.4th 913, 920, 95 Cal.Rptr.3d 202, 209 P.3d 105 (2009) and *People v. Prettyman,* 14 Cal.4th 248, 254, 58 Cal.Rptr.2d 827, 926 P.2d 1013 (1996)).

The intent requirement does not necessarily extend to the non-target crime under the "natural and probable consequences" doctrine; and thus, a defendant can be liable for an ultimate nontarget crime committed by a co-principal direct perpetrator even when the defendant's only intent was to aid and abet in the commission of a less-serious target offense. *See People v. Brigham,* 216

20

Cal.App.3d 1039, 1050–51, 265 Cal.Rptr. 486 (1989) ("[t]he derivative criminal liability of an aider and abettor for a perpetrator's crime may exist even though that crime was unintended by the aider and abettor"). *Cf. also People v. McCoy,* 25 Cal.4th 1111, 1121–22, 108 Cal.Rptr.2d 188, 24 P.3d 1210 (2001) (aider and abettor may be guilty of greater offense than actual perpetrator); *People v. Samaniego,* 172 Cal.App.4th 1148, 1164, 91 Cal.Rptr.3d 874 (2009) (citing *McCoy,* and stating that "its reasoning leads inexorably to the further conclusion that an aider and abettor's guilt may also be less than the perpetrator's, if the aider and abettor has a less culpable mental state"). Furthermore, to be reasonably foreseeable, the "natural and probable consequence" need not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough. *See Medina,* 46 Cal.4th at 920, 95 Cal.Rptr.3d 202, 209 P.3d 105.

The determination of whether an ultimate, non-target crime was a natural and probable consequence of a target crime requires an objective, rather than a subjective, test; the issue is a factual question to be resolved by the jury in light of all the circumstances surrounding the incident. *Prettyman,* 14 Cal.4th at 279 n. 1, 58 Cal.Rptr.2d 827, 926 P.2d 1013 (1996) (citations omitted). Consequently, the issue depends upon whether, in the circumstances presented, a reasonable person in the Petitioner's position would have or should have known that the ultimate non-target crime was a reasonably foreseeable consequence of the target crime. *Id.*

C.   Analysis

In light of the foregoing, the California Court of Appeal's denial of the corresponding claim is entitled to deference.  Although the jury was instructed on the correct target crime and the court erroneously duplicated it as the non-target crime in CALCRIM No. 402, a fair reading of the *entire* jury instructions reveals that no confusion could have resulted to make the trial "fundamentally unfair."  Before setting out the three elements in CALCRIM No. 402 which included the challenged error in the third element, the court gave several correct instructions which gave the proper context

21

for the jury to make its determination.  Specifically, the court told the jury that it "must first decide whether the defendant is guilty of robbery," and only then decide whether he "is guilty of assault with a semiautomatic firearm."  In addition, the trial court correctly instructed the jury that they should review whether assault with a semi-automatic firearm was committed for a reason independent of the common plan to commit the robbery, and, if so, then "the commission of assault with a semi-automatic firearm was not a natural and probable consequence of robbery." Significantly, the trial court correctly set out the elements of "assault with a firearm" in CALCRIM No. 875, and instructed the jury that these were requisite elements in order to find a person guilty of assault with a firearm.

Taken in their entirety, the jury instructions were adequate. The court clearly communicated to the jury that it should consider the charges of assault with a firearm and what role the assaults played in the schematic of the overall crime where robbery was the target offense.  Considering the entirety of the instructions in context – notwithstanding the court's error mentioning robbery twice in CALCRIM No. 402 – no reasonable juror would reach the nonsensical conclusion that they should determine whether robbery was a natural and probable consequence of *itself*. *Gibson*, 387 F.3d at 821 (citing *cup v. Naughten*, 414 U.S. 141, 146-47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)) ("Any challenged instruction must be considered in light of the full set of jury instructions and the trial record as a whole.").  Petitioner cannot cherry pick the court's jury instructions because, once given, a habeas court must presume that jurors followed those jury instructions. *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S.Ct. 727, 733, 145 L.Ed.2d 727 (2000) ("A jury is presumed to follow its instructions."); *Zafiro v. United States*, 506 U.S. 534, 540-41, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993); *Fields v. Brown*, 503 F.3d 755, 782 (9th Cir. 2007) (en banc).  Petitioner has failed to demonstrate that the challenged instruction so infected the entire trial that it rendered his conviction "fundamentally unfair." *Estelle,* 502 U.S. at 67, 71–73.  The Court concludes that a fair reading of

the entire jury instructions thus reveals harmless error where it did not result in "actual prejudice." *Brecht,* 507 U.S. at 637–638.

The state court's decision was not contrary to, nor an unreasonable application of, clearly established federal law and was not an unreasonable determination of the facts.  Therefore, Ground Two does not warrant habeas relief.

## III.     GROUND THREE: Ineffective Assistance of Counsel

Petitioner raised this claim in a habeas petition to the Stanislaus County Superior Court, arguing:

> [. . .] that defense counsel was ineffective for several reasons pertaining to the pretrial aspects of the case.  He asserts that counsel, at the motion to suppress, should have called CHP officers to testify, not only for their own direct testimony, but also to show that Officer Bothe lied during his testimony, and that counsel should have shown the aerial video of the car stop. Petitioner alleges that counsel failed to advise him of the 18-year offer.

*See People v. Scott*, Stanislaus Superior Court Case No. 1097055 (April 3, 2013). [6]

To establish ineffective assistance of counsel, Petitioner must prove: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 688, 694, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  A reasonable probability of a different result "is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  This standard sets an extremely high bar, especially in a habeas petition.

---

[6] As to Petitioner's remaining claims in Grounds Three through Six, these claims were all later raised in habeas applications to the California Court of Appeal, Fifth Appellate District, and in the California Supreme Court.  Because the courts summarily denied the previous petition, the Superior Court written decision denying on the merits is the last reasoned decision.  Insofar as Petitioner challenges the sufficiency of the Superior Court's decision on the merits (and alternatively on procedural grounds), and because the higher state courts denied those claims without comment, in an abundance of caution this Court will review and deny Grounds Three, Four, Five, and Six under a *de novo* standard of review, notwithstanding any question of exhaustion. *See* 28 U.S.C. § 2254(b)(2) (habeas petition may be denied on the merits notwithstanding failure to exhaust state court remedies); *Pirtle v. Morgan,* 313 F.3d 1160, 1167–68 (9th Cir. 2002) (federal habeas court reviews unexhausted claim *de novo*).

*Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 788, 178 L. Ed. 2d 624 (2011); *see also Padilla v. Kentucky*, — U.S. —, 130 S.Ct. 1473, 1485, 176 L.Ed. 2d 284 (2010) ("[s]urmounting *Strickland*'s high bar is never an easy task."). The court may reject the claim upon finding either that counsel's performance was reasonable or the claimed error was not prejudicial. *Id.* at 697; *see Gentry v. Sinclair*, 705 F.3d 884, 889 (9th Cir. 2013), *cert. denied*,— U.S. ——, 134 S.Ct. 102, 187 L.Ed.2d 75 (2013) ("[f]ailure to meet either [*Strickland* ] prong is fatal to a claim"); *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) ("Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other.") (citation omitted). If a reviewing court can conceive of a reasonable explanation for counsel's action or inaction, the court need not determine the actual explanation. *Morris v. California*, 966 F.2d 448, 456–67 (9th Cir. 1992), *cert. denied*,506 U.S. 831, 113 S.Ct. 96, 121 L.Ed.2d 57 (1992).

Review of counsel's performance is "highly deferential" and there is a "strong presumption" that counsel rendered adequate assistance and exercised reasonable professional judgment. *Williams v. Woodford*, 384 F.3d 567, 610 (9th Cir. 2004), *cert. denied*,546 U.S. 934, 126 S.Ct. 419, 163 L.Ed.2d 319 (2005) (quoting *Strickland*, 466 U.S. at 689). The court must judge the reasonableness of counsel's conduct "on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. The court may "neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight . . . ." *Matylinsky v. Budge*, 577 F.3d 1083, 1091 (9th Cir. 2009), *cert. denied*,558 U.S. 1154, 130 S.Ct. 1154, 175 L.Ed.2d 984 (2010) (citation and internal quotations omitted); *see Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.") (citations omitted). Petitioner bears the burden to show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 131 S.Ct. at 787 (citation and internal quotations

24

omitted); *see Strickland,* 466 U.S. at 689 (petitioner bears burden to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy") (same).

A state court's decision rejecting a *Strickland* claim is entitled to "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington,* 131 S.Ct. at 785.  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788.  "In assessing prejudice under *Strickland,* the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Id.* at 791–92 (citations omitted).  Rather, the issue is whether in the absence of counsel's alleged error it is "reasonably likely" that the result would have been different. *Id.* at 792 (quoting *Strickland,* 466 U.S. at 696).  "The likelihood of a different result must be substantial, not just conceivable." *Id.*

Here, Petitioner contends that his counsel failed to inform him of the 18-year offer.  As the state court emphasized:

> The court's recollection is that offers were made to the defendants throughout the many pretrial proceedings, including a similar offer to Petitioner while he was representing himself. Moreover, as the People's informal response states, the 18-year offer is actually on the record and was rejected by Petitioner, who continued to insist on a "single-digit" offer.  The court's recollection is that Petitioner did not indicate that he needed more time to discuss the offer with counsel, which was consistent with his position throughout the proceedings.

The record plainly shows that Petitioner knew about the offer and rejected it.

Petitioner further contends that counsel's representation was inadequate at the pretrial suppression hearing, however, his argument distills to a challenge of the state court's resolution of the suppression hearing.  Because the matter was resolved by the state court, this Court cannot relitigate the underlying motion to suppress about which Petitioner complains. *See Stone v. Powell*, 428 U.S. 465 (1976).  To the extent that Petitioner's contends an abuse of discretion, it is not a basis

for habeas corpus relief. *See Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984) ("A federal court may not issue the write [of habeas corpus] on the basis of a perceived error of state law."); *Williams v. Borg*, 139 F.3d 737, 740 (9th Cir. 1998) (Federal habeas relief is available "only for constitutional violation, not for abuse of discretion.") *cert* denied, 525 U.S. 937, 119 S.Ct. 353, 142 L.Ed. 2d 292 (1998). Ultimately, Petitioner fails to demonstrate that counsel's representation fell below an objective standard of reasonableness, and, given the overall strength of the evidence, likewise fails to show that but for counsel's errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 688.

Under these standards, Petitioner's claims of counsel's ineffectiveness, considered individually or in combination, do not merit federal habeas relief.

**IV.     GROUND FOUR: Improper Use of Prior Conviction**

Petitioner argues that because the trial court failed to undertake an independent review of whether in a previous trial he had been properly advised of his constitutional rights, the trial court's use of the resulting conviction as a prior conviction for sentencing purposes in the instant case was erroneous. The state court reviewed the same question in the state habeas petition, summarizing that "Petitioner alleges the court abused its discretion in failing to consider whether Petitioner's *Boykin-Tahl* rights were violated with respect to a prior conviction."

The Court may not grant Petitioner relief on this claim because Petitioner's argument is a collateral attack on his prior conviction. The United States Supreme Court has held that a petitioner may not collaterally attack his prior conviction in a section 2254 petition for habeas relief if a prior conviction used to enhance a state sentence is no longer open to direct or collateral attack in its own right because a petitioner unsuccessfully pursued or failed to pursue those remedies. *Lackawanna County Dist. Attorney v. Coss,* 532 U.S. 394, 402, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001); *Nunes v. Ramirez–Palmer,* 485 F.3d 432, 443 (9th Cir. 2007). Here, Petitioner fails to marshal sufficient facts

to support his contention that the prior conviction is open to direct or collateral attack in its own right.  Although an exception exists where, in violation of the Sixth Amendment, a court failed to appoint counsel in the prior proceeding, *Lackawanna,* 531 U.S. at 404, that exception does not apply here because Petitioner was represented by counsel at the prior trial which resulted in his conviction. Therefore, Petitioner is not entitled to relief on this claim.

## V.    GROUND FIVE: Prosecutorial Misconduct

Renewing another of his state habeas claim, Petitioner argues that he received an unfair trial because, in violation of his due process rights, the prosecution failed to disclose material evidence to the defense.

Applicable Federal Law

Habeas relief based on claims of prosecutorial misconduct will be granted only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (internal quotations omitted) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)).  "Th[is] standard allows a federal court to grant relief when the state-court trial was fundamentally unfair but avoids interfering in state-court proceedings when errors fall short of constitutional magnitude." *Drayden v. White,* 232 F.3d 704, 713 (9th Cir. 2000).  "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller,* 483 U.S. 756, 765, 107 S.Ct. 3102, 3109, 97 L.Ed.2d 618 (1987) (citation and internal quotations omitted).

Under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment. *Smith v. Cain,* ⎯⎯ U.S. ⎯⎯, 132 S.Ct. 627, 630, 181 L.Ed.2d 571 (2012).  Evidence is material under Brady "if there is a reasonable probability

that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley,* 514 U.S. 419, 433, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995) (*quoting United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)). "A reasonable probability does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine[ ] confidence in the outcome of the trial.' " *Smith,* 132 S.Ct. at 630 (quoting *Kyles,* 514 U.S. at 434, 115 S.Ct. at 1566). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999).

Analysis

Petitioner's allegations that the prosecutor "withheld" exculpatory information, and, in particular, concealed evidence that allegedly would have revealed that some judicial personnel or law enforcement officials involved in the case engaged in some manner of business or financial dealings with the credit union that Petitioner robbed, are wholly speculative and conclusory. To the extent that Petitioner might be advancing a *Brady* claim, Petitioner must show that the prosecution suppressed evidence that would have been "material" either to the guilt determination or punishment phase. *See Brady,* 373 U.S. at 87. First, Petitioner must establish that there was concealment because "suppression" is a necessary element of a *Brady* claim. *See United States v. Dupuy,* 760 F.2d 1492, 1502 n. 5 (9th Cir. 1985). Second, Petitioner must show that the suppressed evidence was "material," that is, that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *See United States v. Bagley,* 473

U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id*.

Petitioner can show neither suppression nor materiality.  There is no evidence that anyone has or had any such evidence.  Second, Petitioner asserts that the facts as he alleges are so impactful that it necessarily undermines confidence in his conviction.  However, whether someone related to the instant case did business with or banked at the credit union is simply irrelevant to the crimes for which Petitioner was convicted: robbery and assault.  Assuming, *arguendo*, the facts are as Petitioner alleges, he could still have been found guilty of all charges based on the weight of other evidence.  "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs,* 427 U.S. 97, 109–110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).  Thus, even if Petitioner could establish that the prosecution had records showing that someone involved in the case had done business with the credit union, that showing is immaterial because Petitioner is merely speculating that the defense would have been helped by the information.  Petitioner fails to present facts with any specificity that would indicate a particular bias.  The state court disagreed with Petitioner's argument and found that any such evidence could not have been material in the *Brady* sense.

Given the strength of the evidence, this Court likewise concludes that it is unreasonable to conclude that nondisclosure of such nonexculpatory information was prejudicial to Petitioner or could otherwise be expected to impact guilt or punishment in these circumstances.  Ground Five does not warrant federal habeas relief.

## VI.   GROUND SIX: Cumulative Error

Petitioner contends that the combined effect of alleged cumulative errors at trial violated his rights.  The Ninth Circuit has held that "where there is a 'unique symmetry' of otherwise harmless

errors, such that they amplify each other in relation to a key contested issue in the case," the combined multiple errors may justify habeas relief. *Ybarra v. McDaniel,* 656 F.3d 984, 1001 (quoting *Parle v. Runnels,* 505 F.3d 922, 927 (9th Cir. 2007)).  However, the Ninth Circuit has also stated that where the combined effect of the claimed errors did not infect the trial with unfairness, or render the defense "far less persuasive than it might otherwise have been" such that due process has been violated, habeas relief is not warranted. *Ybarra,* 656 F.3d at 1001.

Here, no single error warrants habeas relief.  Petitioner's contentions of insufficient evidence, instructional error, ineffective assistance of counsel, improper use of conviction, and prosecutorial misconduct do not combine to produce any "unique symmetry" that rendered the trial unfair.

Accordingly, Petitioner's claim of cumulative error does not warrant federal habeas relief. *See, e.g., Hayes v. Ayers,* 632 F.3d 500, 524 (9th Cir. 2011) ("[b]ecause we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible").

## VII.    EVIDENTIARY HEARING

Petitioner requests an evidentiary hearing.  Pursuant to 28 U.S.C. Section 2254(e)(2), an evidentiary hearing is appropriate under the following circumstances:

(e) (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i)     a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii)    a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense[.]

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." *Baja v. Ducharme,* 187 F.3d 1075, 1078 (9th Cir.1999). *See also Earp v. Ornoski,* 431 F.3d 1158, 1166 (9th Cir. 2005); *Insyxiengmay v. Morgan,* 403 F.3d 657, 669–70 (9th Cir. 2005). A petitioner requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief." *Earp,* 431 F.3d at 1167 (citing *Insyxiengmay,* 403 F.3d at 670, *Stankewitz v. Woodford,* 365 F.3d 706, 708 (9th Cir. 2004) and *Phillips v. Woodford,* 267 F.3d 966, 973 (9th Cir. 2001)). To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief." *Ortiz v. Stewart,* 149 F.3d 923, 934 (9th Cir.1998) (internal quotation marks and citation omitted).

The undersigned concludes that no additional factual supplementation is necessary in this case and that an evidentiary hearing is not appropriate with respect to the claims raised by Petitioner. Petitioner has not demonstrated a colorable claim for relief because the facts alleged by Petitioner in support of his claims, even if established at a hearing, would not entitle him to federal habeas relief.

## VIII.   CERTIFICATE OF APPEALABILITY

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court. 28 U.S .C. § 2253(c)(1)(A); *Miller–El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2). Under this standard, a petitioner must show that

reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Miller–El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether: (1) the petition states a valid claim of the denial of a constitutional right, and (2) the district court was correct in any procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 483–84, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong. *Id.* An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the applicant need not show that the appeal will succeed. *Miller–El,* 537 U.S. at 338.

Here, is does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner. Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

## IX.     RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the District Court issue an Order: (1) accepting and adopting the Magistrate Judge's Findings and Recommendation; (2) denying Petitioner's request for an evidentiary hearing; (3) directing judgment denying the Petition and dismissing this case with prejudice; and, (4) declining to issue a Certificate of Appealability.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within

thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

    Dated:   __November 5, 2014__             _____/s/ Sandra M. Snyder___
                                         UNITED STATES MAGISTRATE JUDGE